UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 09-62033-CIV-COOKE/TURNOFF

MCARTHUR DAIRY, LLC,

    Plaintiff/Counter-Defendant

vs.

MCCOWTREE BROTHERS DAIRY, INC., *et al.*

    Defendants/Counter-Plaintiffs

vs.

DEAN FOODS COMPANY,

    Third-Party Defendant.

_____/

**ORDER GRANTING IN PART AND DENYING IN PART
MCARTHUR DAIRY, LLC'S AND DEAN FOODS COMPANY'S
MOTION TO DISMISS COUNTERCLAIMS AND THIRD-PARTY CLAIMS**

THIS MATTER is before me on Plaintiff/Counter-Defendant McArthur Dairy, LLC's and Third-Party Defendant Dean Foods Company's Motion to Dismiss Counterclaims and Third-Party Claims (ECF No. 17). I have reviewed the record, the arguments and the relevant legal authorities. For the reasons explained below below, the motion to dismiss is granted in part.

**Background**[1]

This case involves the production, processing, bottling and distribution of Grade A milk.[2] Plaintiff/Counter-Defendant McArthur Dairy, LLC ("McArthur") is in the business of producing,

---

[1] These facts are taken from the Plaintiff's Complaint. *See Beck Deloitte & Touche*, 144 F.3d 732, 735 (11th Cir. 1998) ("In evaluating the sufficiency of a complaint, a court must accept the well pleaded facts as true and resolve them in the light most favorable to the plaintiff.").

[2] Milk contains nine essential nutrients and vitamins, including protein, vitamins A, D, and B12, calcium potassium, phosphorus, riboflavin, niacin, zinc, and magnesium. Milk is the only drink in the world that contains such a large range of naturally occurring nutrients.

processing, distributing and selling dairy products. Defendant/Counter-Plaintiff McCowtree Brothers Dairy, Inc. ("McCowtree Brothers") is a milk distributor involved in the milk distribution business to retailers in South Florida. Defendant/Counter-Plaintiff Anthony Meyer ("Meyer") is the president of McCowtree. (McCowtree Brothers and Meyer are collectively referred to as "McCowtree"). Third-Party Defendant Dean Foods Company ("Dean Foods"), McArthur's parent organization, is a food and beverage company that purchases, processes and ships milk throughout the country.

Prior to 2001, Suiza Foods Corporation, a Texas based dairy company, and Dean Foods were known to be the two largest processed milk bottlers in the United States. In late 2001, Suiza Foods and Dean Foods merged and continued to operate under Dean Foods. In order to facilitate the Dean-Suiza merger, the Department of Justice ("DOJ") required Suiza Foods and Dean Foods to divest eleven milk bottling plants in eight states (Alabama, Florida, Indiana, Kentucky, Ohio, South Carolina, Virginia, and Utah) to National Dairy Holdings ("NDH"), an entity controlled by Dairy Farmers of America ("DFA"), the nation's largest milk cooperative.[3] The Suiza Food dairies that were divested included Velda Farms in Miami, Florida and Velda Farms in Winter Haven, Florida. As a condition allowing for the Dean-Suiza merger to proceed, the DOJ also required Suiza Foods to modify its full-supply agreement with DFA to ensure that the merged entity's plants would actively compete to buy their raw milk.

Dean Foods is currently the largest processed milk bottler in the Southeast. Together, Dean Foods and NDH operate 33 of the 51 (64.7%) of the processed milk bottling plants operating in the region. McCowtree alleges that Dean Foods failed to execute the DOJ's directive and have instead entered into exclusive supply agreements with DFA and NDH to

---

[3] Milk was delivered in glass bottles until plastic containers were invented in 1964.

decrease competition for processed milk and have refrained from competing for milk sales to grocery retailers. As a result, McCowtree claims to be dependent on Dean Foods for much of its milk needs.

On January 3, 2005, McArthur and McCowtree entered into a Non-Exclusive Wholesale Distribution Agreement (the "Agreement") whereby Dean Foods, operating through its wholly owned subsidiary McArthur, promised competitive pricing and consistent milk products and services. On November 20, 2009, McArthur filed a complaint in the Circuit Court for the Seventeenth Judicial Circuit in and for Broward County, Florida, alleging causes of action against McCowtree for breach of contract (Count I), account stated (Count II), goods sold and delivered (Count III), and open account (Count IV). McArthur alleges that McCowtree is in default of the contract terms and owes McArthur over one million dollars in goods sold, interest, attorney's fees and other collection costs. On December 28, 2009, McCowtree removed the case to this Court and simultaneously filed a counterclaim against McArthur and Dean Foods for various violations of the Sherman Act, 15 U.S.C. § 1, et al., including violation of agreement not to compete (Count I), conspiracy to unreasonably restrain trade (Count II), unlawful monopolization (Count III), attempt to monopolize (Count IV), conspiracy to monopolize (Count V), breach of contract (Count VI), fraudulent inducement (Count VII), tortuous interference with advantageous business relationship (Count VIII), and violation of the Florida Antitrust Act (Count IX). McCowtree claims that McArthur and Dean Foods strategically sold and acquired milk processing plants in and attempt to "maintain and extend monopoly power in the relevant market" which "foreclosed a substantial share of the market for processed milk in South Florida." (*Counterclaim*, ¶ 91). McCowtree also alleges that McArthur breached the contract and other business standards.

**Legal Standard**

"A pleading that states a claim for relief must contain … a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (abrogating *Conley v. Gibson*, 355 U.S. 41 (1957)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). Detailed factual allegations are not required, but a pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of the cause of action will not do." *Id.* at 1949 (quoting *Twombly*, 550 U.S. at 555). A complaint's factual allegations must be enough to raise a right to relief above the speculative level. *Id.*

When considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must accept all of the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). A complaint is subject to dismissal under Rule 12(b)(6) "when the allegations – on their face – show that an affirmative defense bars recovery on the claim." *Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1022 (11th Cir. 2001).

"A court's review on a motion to dismiss is limited to the four corners of the complaint," and any attachments incorporated into the complaint. *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009); *see* Fed. R. Civ. P. 10(c) ("[a] copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes."). "[A] document need not be physically attached to a pleading to be incorporated by reference to it; if the document's contents are alleged in a complaint and no party questions those contents, [a court] may consider such a

4

document if that document is central to the plaintiff's claims." *Daewoo Motor Am., Inc. v. Gen. Motors*, 459 F.3d 1249, 1266 n. 11 (11th Cir. 2006); *see also Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (explaining that "a court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed," *i.e.* "the authenticity of the document is not challenged"). If a document that is appended pursuant to Rule 10(c) forecloses recovery as a matter of law, dismissal is appropriate. *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007).

## Discussion

### A. Counts I and II: Violation of Section 1 of the Sherman Act, 15 U.S.C. § 1

Section 1 of the Sherman Act prohibits "[e]very contract, combination …, or conspiracy, in restraint of trade or commerce." 15 U.S.C. § 1. "An agreement to restrain trade may be unlawful even though it does not entirely exclude its victims from the market." *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, et al.*, 459 U.S. 519, 528 (1983) (citing *Assoc. Press v. United States*, 326 U.S. 1, 17 (1945)). "Coercive activity that prevents its victims from making free choices between market alternatives is inherently destructive of competitive conditions and may be condemned even without proof of its actual market effect." *Id.* A plaintiff claiming conspiracy to restrain trade, however, must establish (1) an agreement or conspiracy among two or more persons or distinct business entities, (2) by which the persons or entities intend to harm or restrain competition, (3) that actually restrains competition. *Aquatherm Indus., Inc. v. Fla. Power & Light Co.*, 145 F.3d 1258, 1262 (11th Cir. 1998).

In their motion to dismiss, McArthur and Dean Foods urge the Court to conjunctively dismiss Count I and Count II because both claims "are based on an alleged conspiracy between

5

McArthur and [Dean Foods]." (*Mot. to Dismiss*, ECF No. 18 at 1). Specifically, McArthur and Dean Foods assert that, as a matter of law, "an alleged conspiracy between a parent corporation and its wholly owned subsidiary is not actionable under the antitrust laws." (*Id.* citing *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 768-69 (1984)). Under the *Copperweld* intra-corporate conspiracy doctrine, "[t]he officers of a single firm are not separate economic actors pursuing separate economic interests, so agreements among them do not suddenly bring together economic power that was previously pursuing divergent goals." *Copperweld*, 467 U.S. at 769. The criteria measuring the "separateness" of a subsidiary from its parent company to determine whether there is an exception to the "single entity" test include whether the subsidiary has separate control of its day-to-day operations, separate officers, separate corporate headquarters, and so forth. *Id.* at 772 n.18. Entities that do not share a unity of interest may be found liable for conspiratory antitrust conduct. *See American Needle, Inc. v. Nat'l Football League*, 130 S. Ct. 2201, 2215 (2010). "[W]hen a subsidiary is wholly owned, however, these facts are not sufficient to describe a separate economic entity" for purposes of a conspiracy to restrain trade under the Sherman Act. *Id.* *See also Photovest Corp. v. Fotomat Corp.*, 606 F.2d 704 (7th Cir. 1979), *cert. denied*, 447 U.S. 917; *Domed Stadium Hotel, Inc. v. Holiday Inns, Inc.*, 732 F.2d 480 (5th Cir. 1984); *Broadway Delivery Corp. v. United Parcel Serv. of America, Inc.*, 651 F.2d 122 (2d Cir. 1981).

Count I alleges that McArthur and Dean Foods "agreed to lessen competition for sales of processed milk to retailers in South Florida, and have, pursuant to such agreement, refrained from competing for such sales to distributors and retail stores." (*Counterclaim*, ECF No. 1, ¶ 71). Count II alleges that McArthur and Dean Foods "entered into exclusive supply agreements with, and have actively conspired with one another through the means described above, for the

purpose of lessening competition among independent milk producers and cooperatives…" (*Id.*, ¶ 78). In stating "the means described above," McCowtree refers to the allegations that Dean Foods, DFA and NDH "entered into an agreement to lessen competition of sales of processed milk," (*Id.,* ¶ 48), that Dean Foods "attempted to suppress and restrain competition" through "a series of full-supply agreements" with DFA, (*Id.,* ¶ 52-53), and that McCowtree was forced to "compete head to head with other independent McArthur and Velda distributors in an effort to put them out of business (solely for [Dean Foods'] and McArthur's benefit)," (*Id.*, ¶ 65). As pled, the Counterclaim fails to clearly identify which entities – Dean Foods, McArthur, DFA, NDH – purportedly violated the Sherman Act. Accordingly, Counts I and II fails to state a cause of action for violation 15 U.S.C. § 1 and are dismissed without prejudice.

**B. Count II: Violation of Section 3 of the Clayton Act**

Section 3 of the Clayton Act makes it unlawful to sell goods on the "condition, agreement, or understanding" that the purchaser refrain from dealing with competitors of the seller if the effect "may be able to substantially lessen competition or tend to create a monopoly in any line of commerce." 15 U.S.C. § 14. Section 3 may be used to challenge restrictions on competition in the form of tying arrangements and exclusive dealing arrangements. *Gulf Oil Corp. v. Copp Paving Co., Inc.*, 419 U.S. 186, 194 (1974). "A tying arrangement is 'an agreement by a party to sell one product but only on the condition that the buyer also purchases a different (or tied) product, or at least agrees that he will not purchase that product from any other supplier.'" *Southern Card & Novelty, Inc. v. Lawson Mardon Label, Inc.*, 138 F.3d 869, 874 (11th Cir. 1998) (quoting *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 462 (1992). In contrast, an exclusive dealing arrangement is an agreement by which a seller agrees to sell all of its output of a commodity to a particular buyer, or when a buyer agrees to purchase its

7

requirements of a particular commodity exclusively from a particular seller. *Id.* at 876. Exclusive dealing arrangements do not violate § 3 of the Clayton Act unless there is a probability that the agreement will foreclose competition "in a substantial share of the line of commerce affected." *Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 327 (1961) (quoting *Standard Oil Co. v. United States*, 337 U.S. 293, 317 (1949)).

McCowtree's § 3 claims arise from the exclusive supply agreements for the purchase of raw milk between Dean Foods, DFA and NDH.[4] (*Counterclaim*, ¶¶ 78-82). Courts employ a three-part inquiry to determine whether a plaintiff has established that an exclusive dealing agreement foreclosed competition in the relevant market. First, the relevant product market must be identified. *See Tampa Elec. Co.*, 365 U.S. at 327. The relevant market establishes the backdrop against which to measure economic power and includes both the geographical market and the product market. *T. Harris Young & Assoc., Inc. v. Marquette Elec., Inc.*, 931 F.2d 816, 823 (11th Cir. 1991), cert. denied, 502 U.S. 1013 (1991). The geographic market encompasses the area in which the defendant effectively competes and extends to the area of effective competition where buyers can turn for alternate sources of supply. *Otter Tail Power Co. v. United States*, 410 U.S. 366, 377 (1973). "The outer boundaries of a product market are determined by the reasonable interchangeability of use of the cross-elasticity of demand between the product itself and substitutes for it." *T. Harris Young & Assoc., Inc.*, 931 F.2d at 824. The relevant geographic market must be identified "by carful selection of the market area in which the seller operates.". *Tampa Elec. Co.*, 365 U.S. at 327. Finally, a plaintiff must show that the "competition foreclosed by the arrangement constitutes a 'substantial share of the relevant

---

[4] McArthur is not alleged to be a party to the exclusive supply agreements.

market.'" *Id.* at 328  That is, "the opportunities for other traders to enter into or remain in that market must be significantly limited." *Id.*

The relevant product and geographic markets at issue involve processed milk in South Florida. McCowtree alleges that the supply agreements "constitute unreasonable restraints on trade in the market for raw milk" which has in turn "resulted in substantial harm to competition for the sale of processed milk" in South Florida.[5] (*Counterclaim*, ¶¶ 80-81).  Dean Foods does not challenge the existence of the supply agreements.  Rather, Dean Foods argues that McCowtree lacks standing to bring a § 3 claim.[6]  Under section 4 of the Clayton Act, "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws" may recover "threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee."  15 U.S.C. § 15(a).  To recover damages, the injured party must demonstrate an antitrust violation and an "injury of the type the antitrust laws were intended to prevent and that flows from that which makes the defendants' acts unlawful." *MCA Television Ltd. v. Public Interest Corp.*, 171 F.3d 1265, 1279 (11th Cir. 1999) (quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977)).  "In addition to showing antitrust injury, the plaintiff must be an efficient enforcer of the antitrust laws." *Palmyra Park Hosp. Inc. v. Phoebe Putney Memorial Hosp.*, 604 F.3d 1291, 1299 (11th Cir. 2010).  Although there is no bright-line rule, courts are directed to consider a variety of factors including the directness and remoteness of the injury, whether other plaintiffs were better suited

---

[5] Milk costs more than gasoline in many areas of the United States.

[6] The cases relied upon by Dean Foods, *Transource Intern., Inc. v. Trinity Indus., Inc.*, 725 F.2d 274 (5th Cir. 1984) and *Southern Concrete Co. v. U.S. Steel Corp.*, 535 F.2d 313 (5th Cir. 1976), are inapplicable to the standing analysis in this case.  In both cases, the parties were vertical competitors and, as a result, the Fifth Circuit was obligated to employ a "rule of reason" standing analysis.  Under such an analysis, "standing is limited to purchasers, lessees and competitors of the supplier." *Transource Int'l*, 725 F.2d at 284.

to vindicate the harm, whether the damages are speculative, the potential for duplicative recoveries and whether the plaintiff would be able to effectively enforce the judgment. *See Assoc. Gen. Contractors of Cal., Inc.*, 459 U.S. at 528; *Todorov v. DCH Healthcare Auth.*, 921 F.2d 1438, 1448 (11th Cir. 1991).

McCowtree alleges injuries that are "of the type the antitrust laws were intended to prevent." McCowtree claims that the Dean Foods' exclusive supply agreements have resulted in higher prices for raw and processed milk, and fewer choices for consumers. This is precisely the type of harm McCowtree should be allowed to vindicate through the antitrust laws. Moreover, McCowtree is an efficient enforcer of the antitrust laws. The injuries alleged are direct, not remote, and are not speculative. McCowtree has a strong incentive to sue and is well vindicated the harm alleged. In addition, allowing McCowtree to sue Dean Foods does not create a risk for duplicative recoveries. McCowtree's damages flow directly from the actions of Dean Foods and its wholly owned subsidiary McArthur. Dean Foods is a large corporation with significant financial and legal resources. McCowtree would certainly be able to effectively enforce any judgment obtained against Dean Foods. Considering the dynamics of the process milk market, the injuries alleged and the redress sought, McCowtree has antitrust standing to pursue its claims against Dean Foods.

**C.  Counts III, IV and V: Violation of Section 2 of the Sherman Act, 15 U.S.C. § 2**

Monopoly power is "the power to raise prices to supra-competitive levels or ... the power to exclude competition in the relevant market either by restricting entry of new competitors or by driving existing competitors out of the market." *U.S. Anchor Mfg., Inc. v. Rule Indus., Inc.*, 7 F.3d 986, 994 (11th Cir. 1993) (citing *American Key Corp. v. Cole Nat'l Corp.*, 762 F.2d 1569, 1581 (11th Cir. 1985)). "The most direct method of establishing monopoly power is through

economic proof, namely, demand and supply curves." *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1246 (11th Cir. 2002). The principal measure of monopoly power, however, is market share. *Id.* (citing *U.S. Anchor Mfg., Inc.*, 7 F.2d at 999). "A market share at or less than 50% is inadequate as a matter of law to constitute monopoly power." *Id.* at 1251.

Congress passed the antitrust laws to promote competition and to prevent the unauthorized use of monopoly power. *See Gulf Oil Corp.*, 419 U.S. at 204 (citation omitted). In addition to restrictions against contracts and conspiracies that restrain trade, § 2 of the Sherman Act outlaws monopolization, attempts to monopolize and conspiracies to monopolize. 15 U.S.C. § 2. The Counterclaim alleges that Dean Foods and McArthur have acquired, attempted to acquire and/or conspired to acquire monopoly power in violation of § 2 of the Sherman Act.

1. *Monopolization*

In order to prove unlawful monopolization, a plaintiff must show possession of monopoly power in the relevant market that was willfully acquired or maintained, and not merely acquired because of superior products, business acumen, or historical accident. *See Pacific Bell Tel. Co. v. Linkline Commc'n, Inc.*, 555 U.S. 438 (2009) (citing *United States v. Grinnell Corp.,* 384 U.S. 563, 570-71 (1966); *Levine v. Cent. Fla. Med. Affiliates, Inc.,* 72 F.3d 1538, 1555 (11th Cir. 1996), *cert. denied*, 519 U.S. 820 (1996). McArthur and Dean argue that the Counterclaim fails to allege a "specific allegation concerning market share" in the South Florida market. I disagree. McCowtree alleges that McArthur and Dean control approximately seventy-seven percent (77%) of the processed milk market in Southeast Region of the United States and that they control the majority of the processed milk market in South Florida. (*Counterclaim*, ¶¶ 42, 43, 57, 61). McCowtree also alleges that McArthur and Dean Foods have willfully taken steps "to acquire and maintain market power in the market for processed milk sold to retail outlets in the

Southeast" and South Florida. (*Id.*, ¶¶ 51, 91). These factual allegations sufficiently state a cause of action for monopolization in violation of 15 U.S.C. § 2.

### 2. *Attempt to Monopolize*

To state a claim for attempted monopolization under § 2 of the Sherman Act, a plaintiff must allege (1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power. *See U.S. Anchor Mfg., Inc.*, 7 F.3d at 993 (citing *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 455 (1993)). McCowtree claims that McArthur and Dean Foods attempted to use exclusionary and predatory conduct including, but not limited to, the purchase and closing of fourteen (14) bottling plants in the South Florida area. (*Counterclaim*, ¶¶ 51, 99). McCowtree's claims contain a sufficiently developed description of McArthur's and Dean Food's intent to monopolize through the sales and acquisitions of milk processing plants and a dangerous probability of achieving monopoly power.

### 3. *Conspiracy to Monopolize*

A conspiracy to monopolize requires (1) an agreement to restrain trade, (2) deliberately entered into with the specific intent of achieving a monopoly rather than a legitimate business purpose, (3) which could have had an anticompetitive effect, and (4) the commission of at least one overt act in furtherance of the conspiracy. *Seagood Trading Corp. v. Jerrico, Inc.*, 924 F.2d 1555, 1576 (11th Cir. 1991). McArthur and Dean Foods argue that, as a matter of law, the *Copperweld* intra-corporate conspiracy doctrine precludes McCowtree from establishing the existence of a conspiracy. Although *Copperweld* specifically analyzes conspiracy claims filed under 15 U.S.C. § 1, the Eleventh Circuit has found that the intra-corporate conspiracy doctrine applies equally to §1 and § 2 Sherman Act conspiracy claims. *See Bolt v. Halifax Hosp. Med.*

*Ctr.*, 891 F.2d 810, 817 n.9 (11th Cir. 1990), *rev'd on other grounds*, 980 F.2d 1381 (11th Cir. 1993). Count V alleges that McArthur and Dean Foods "agreed among themselves and otherwise conspired to obtain and/or maintain monopoly power in the market for processed milk." (*Counterclaim*, ¶ 105). The claim also alleges that "[t]he overt acts done in furtherance of such conspiracy include the agreement between [Dean Foods and McArthur] not to compete for the sales of processed milk to distributors, like [McCowtree] and retail stores, as well as [Dean Foods'] entry into full-supply agreements. (*Counterclaim*, ¶ 107). Absent the involvement of an entity with separate and distinct corporate interests, McCowtree's claims fall squarely within the purview of *Copperweld* and thus fail as a matter of law.

### D. Counts VI, VII, and VIII: Common Law Counterclaims[7]

#### 1. Breach of Contract (Count VI)

Under Florida law, a breach of contract claim must allege the existence of a valid contract, a material breach of that contract and damages. *See Beck v. Lazard Freres & Co., LLC,* 175 F.3d 913, 914 (11th Cir. 1999). McCowtree alleges that McArthur breached the parties' Agreement by: (1) failing to regularly provide the milk products and services promised to McCowtree; (2) requiring McCowtree to purchase and distribute non-milk products from McArthur; (3) requiring McCowtree to compete with other milk distributors; (4) routinely changing the price of milk charged to McCowtree; (5) requiring "bogus milk rebates"; and (6) cutting off McCowtree's milk supply in late 2009. (*Counterclaim*, ¶¶ 65-69). McArthur and Dean Foods argue that McCowtree's breach of contract cause of action is explicitly contradicted by the terms and conditions of the Agreement. This is an issue of ambiguity in the contract, which is more appropriate for summary judgment. *See Bridge Capital Investors, II v.*

---

[7] Dean Foods is not a named defendant in any of the common law counterclaims (Counts VI, VII and VIII).

*Susquehanna Radio Corp.*, 458 F.3d 1212, 1220 n.1 (11th Cir. 2006) (citing *Monahan v. Comm'r*, 321 F.3d 1063, 1068 (11th Cir. 2003) (ambiguity in contract language calls into question the intent of the parties, and thus puts extrinsic evidence, which must usually be considered by a jury, at issue). At this stage of the litigation proceedings, Count VI does indeed state a cause of action for breach of contract.

   2. *Fraudulent Inducement (Count VII)*

A cause of action for fraud in the inducement requires: (1) a false statement concerning a material fact; (2) known to be false; (3) made with the intent to induce another to act upon it; and (4) reliance on the representation. *See Ziemba v. Cascade Int'l, Inc.,* 256 F.3d 1194, 1202 (11th Cir. 2001); *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997). McArthur argues that Count VII fails as a matter of law for two reasons. First, McArthur claims that the Agreement contains a merger clause that prohibits any allegation of inducement against McArthur. Second, McArthur claims that the economic loss rule bars McCowtree's fraudulent inducement cause of action.

   a. *The Merger Clause Does Not Prohibit Fraudulent Inducement*

Under Florida law, "[t]he existence of a merger or integration clause, which purports to make oral agreements not incorporated into the written contract unenforceable, does not affect oral representations which are alleged to have fraudulently induced a person to enter into the agreement." *Mejia v. Jurich*, 781 So.2d 1175, 1178 (Fla. Dist. Ct. App. 2001); *Nobles v. Citizens Mortgage Corp.*, 479 So. 2d 822 (Fla. Dist. Ct. App. 1985) ("oral agreements or representations may be introduced into evidence to prove that a contract was procured by fraud notwithstanding such a merger clause."). McCowtree alleges that McArthur made false representations with the requisite intent for McCowtree to enter into the Agreement based on those representations.

(*Counterclaim*, ¶ 115-118). Accordingly, McCowtree's allegations of fraudulent inducement fall well within the merger clause exception.

### b. The Economic Loss Rule Does Not Bar McCowtree's Claims

The economic loss rule is a judicially created doctrine that precludes certain tort actions where the only damage suffered by the plaintiff are economic losses. *Indemnity Ins. Co. of N. Am. v. Am. Aviation, Inc.*, 891 So. 2d 532, 536 (Fla. 2004) ("Where a contract exists, a tort action will lie for either intentional or negligent acts considered to be independent from the acts that breached the contract.") (citations omitted). The rule applies "where the parties are in contractual privity and one party seeks to recover damages in tort for matters arising from the contract." *Id.* There is a distinction between claims for fraud in the performance of a contract, which are barred by the economic loss rule, and for fraudulent inducement. A plaintiff has a cause of action for fraud if the fraud is perpetrated to induce the plaintiff to enter the contract. *La Pesca Grande Charters, Inc. v. Moran*, 704 So. 2d 710, 712 (Fla. Dist. Ct. App. 1998). "If there is no fraud inducing someone to enter into a contract, but the contract is breached, the cause of action sounds in contract and contract remedies are available." *Moran*, 704 So. 2d at 712. The economic loss rule does not, however, bar tort actions based on fraudulent inducement and negligent misrepresentation. *Allen v. Stephen Co.*, 784 So. 2d 456, 457 (Fla. Dist. Ct. App. 2000). McCowtree has alleged sufficient facts that McArthur's wrongful conduct induced McCowtree to enter into the Agreement, and were not related to the performance of the Agreement.

### 3. *Tortious Interference with Advantageous Business Relationship (Count VIII)*

"Under Florida law, the elements of an interference with a business relationship claim are: (1) the existence a business relationship, (2) the defendant's knowledge of that relationship,

(3) an intentional and unjustified interference with the relationship, and (4) injury resulting from the interference of the relationship." *Dunn v. Air Line Pilots Ass'n*, 193 F.3d 1185, 1191 (11th Cir. 1999). "A thwarted business relationship need not be evidenced by an enforceable contract." *Nautica Int'l, Inc. v. Intermarine USA, LP*, 5 F. Supp. 2d 1333, 1344 (S.D. Fla. 1998) (citing *United Yacht Brokers, Inc. v. Gillespie*, 377 So. 2d 668 (Fla. 1979)). "An action for intentional interference is appropriate even though it is predicated on an unenforceable agreement, if the jury finds that an understanding between the parties would have been completed had the defendant not interfered." *Id.* (citing *F.T. Laundry v. Hornstein*, 462 So. 2d 844, 846 (Fla. Dist. Ct. App. 1985).

McCowtree alleges that McArthur "unjustifiably interfered" with McCowtree's customer business relationships by cutting off McCowtree's milk supply, assuming McCowtree's milk delivery routes, hiring McCowtree's drivers to drive those delivery routes, collecting McCowtree's own accounts receivable, and telling McCowtree's customers that McCowtree was out of business and should conduct all future business with McArthur. (*Counterclaim*, ¶ 122). McArthur argues that McCowtree's claim fails because McCowtree has not alleged the existence of a business relationship under which McCowtree has legal rights. I disagree. The right to secure business relationships and to reap the profits resulting from the performance of contracts or agreements relating to those relationships is a *property right* that entitles a party to protection against interference. *Smith v. Ocean Bank*, 335 So. 2d 641 (Fla. Dist. Ct. App. 1976). McCowtree has adequately pled the existence business relationships to which they have a legal right, McArthur's knowledge of those relationships, unjustified interference with the relationships and damages. McArthur's motion to dismiss Count VIII is denied.

*E. Count IX*

Federal and Florida antitrust laws are analyzed under the same rules and case law. Fla. Stat. § 542.32 ("It is the intent of the Legislature that, in construing this chapter, due consideration and great weight be given to the interpretations of the federal courts relating to comparable federal antitrust statutes."). *See also St. Petersburg Yacht Charters, Inc. v. Morgan Yacht, Inc.*, 457 So.2d 1028, 1032 (Fla. Dist. Ct. App. 1984) ("the Florida legislature has, in effect, adopted as the law of Florida the body of antitrust law developed by the federal courts under the Sherman Act."); Fla. Stat. §§ 542.16 (Florida antitrust laws complement federal antitrust laws), 542.18 (analogous to § 1 of the Sherman Act). For purposes of this Order, the legal analysis pertaining to McCowtree's federal antitrust claims is equally applicable to the Florida antitrust claims. Therefore, because Counts I, II and V fail to survive the Motion to Dismiss, they will fail under the Florida antitrust laws as well.

## Conclusion

For the reasons set forth in this Order, McArthur's and Dean Foods' Motion to Dismiss (ECF No. 17) is **GRANTED** *in part* and **DENIED** *in part*. Count I and Count II are **DISMISSED** *without prejudice*. Count V is **DISMISSED** *with prejudice*. The Motion to Dismiss is **DENIED** as to Counts III, IV, VI, VII, VIII and is **GRANTED** *in part* as to Count IX, consistent with Section E of this Order.

**DONE and ORDERED** in chambers at Miami, Florida this 27th day of May 2011.

*/s/ Marcia G. Cooke*
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*Counsel of Record*