UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 09-62033-CIV-COOKE/TURNOFF

MCARTHUR DAIRY, LLC,

    Plaintiff/Counter-Defendant

vs.

MCCOWTREE BROTHERS DAIRY, INC., *et al.*

    Defendants/Counter-Plaintiffs

vs.

DEAN FOODS COMPANY,

    Third-Party Defendant.

_____/

**ORDER GRANTING IN PARTY AND DENYING IN PART
MCARTHUR DAIRY, LLC'S AND DEAN FOODS COMPANY'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

THIS MATTER is before me on Plaintiff/Counter-Defendant McArthur Dairy, LLC's and Third-Party Defendant Dean Foods Company's Motion for Summary Judgment. (ECF No. 30). I have reviewed the record, the arguments and the relevant legal authorities. For the reasons explained below, the motion for summary judgment is granted in part and denied in part.

**I. BACKGROUND**

On November 20, 2009, Plaintiff/Counter-Defendant McArthur Dairy, LLC ("McArthur") filed a complaint in a Florida state court against Defendant/Counter-Plaintiffs McCowtree Brothers Dairy, Inc. and Anthony Meyers (collectively "McCowtree"), alleging causes of action for breach of contract (Count I), account stated (Count II), goods sold and delivered (Count III), and open account (Count IV). On December 28, 2009, McCowtree removed the case to this Court and simultaneously filed a Counterclaim and Third-Party

Complaint against McArthur and Third-Party Defendant Dean Foods Company ("Dean Foods") for various antitrust violations and common law actions, including violation of agreement not to compete (Count I), conspiracy to unreasonably restrain trade (Count II), unlawful monopolization (Count III), attempt to monopolize (Count IV), conspiracy to monopolize (Count V), breach of contract (Count VI), fraudulent inducement (Count VII), tortious interference with advantageous business relationship (Count VIII), and violation of the Florida Antitrust Act (Count IX).  On July 2, 2010, McArthur and Dean Foods moved to dismiss McCowtree's counterclaims and third-party claims.  On May 27, 2011, McCowtree's federal and state antitrust claims for violation of agreement not to compete (Count I), conspiracy to unreasonably restrain trade (Count II) and conspiracy to monopolize (Count V) were dismissed for failure to state a cause of action.  (ECF No. 66).

Rather than articulating independent legal arguments for summary judgment, McArthur and Dean Foods elected to "incorporate by reference the arguments sets [sic] forth in the memorandum in support of their motion to dismiss (ECF No. 18) and their reply in support of their motion to dismiss (ECF No. 22)."  (*Mem. in Support of Mot. for Summ. J.* 6 n.4 (ECF No. 31)).  Ordinarily, an order granting or denying a motion for summary judgment identifies the relevant factual findings related to the issues ripe for summary disposition.  Unfortunately, in this case, McCowtree has failed or otherwise refused to respond to merits of the motion, with factual contentions or otherwise, and McArthur and Dean Foods have not concisely set forth all facts which are material to the resolution of the claims.  The record pleadings, specifically the Complaint, Counterclaims, and answers and affirmative defenses thereto, provide even less clarity as they raise numerous issues of material fact.  To the extent that the statement of facts submitted by McArthur and Dean Foods is supported by record evidence, those facts are deemed

admitted. S.D. Fla. L.R. 7.5(D); *see also Gossard v. JPMorgan Chase & Co.*, 612 F. Supp. 2d 1242, 1245-46 (S.D. Fla. 2009). The facts relied upon in ruling on McArthur's and Dean Foods' motion to dismiss shall be used where appropriate to provide the requisite detail (i.e., nature of the case, identity of the parties, background information) relevant to the issues raised on summary judgment.

Prior to 2001, Suiza Foods Corporation ("Suiza Foods"), a Texas based dairy company, and Dean Foods were known to be the two largest processed milk bottlers in the United States. Suiza Foods owned 67 dairy processing plants in 29 states and Dean Foods operated 43 plants in 19 states. In late 2001, Suiza Foods and Dean Foods merged and continued to operate under Dean Foods. In order to facilitate the Dean-Suiza merger, the Department of Justice ("DOJ") required Suiza Foods and Dean Foods to divest eleven milk bottling plants in eight states (Alabama, Florida, Indiana, Kentucky, Ohio, South Carolina, Virginia, and Utah) to National Dairy Holdings ("NDH"), an entity controlled by Dairy Farmers of America ("DFA").[1] The Suiza Food dairies that were divested included Velda Farms in Miami, Florida and Velda Farms in Winter Haven, Florda. As a condition allowing the Dean-Suiza merger to proceed, the DOJ also required Suiza Foods to modify its full-supply agreement with DFA to ensure that the merged entity would actively compete to buy their raw milk.

Dean Foods is the largest processed milk bottler in the Southeast. McArthur, a wholly owned subsidiary of Dean Foods, is a food and beverage company that purchases, processes and ships milk throughout the country. Milk bottlers, such as McArthur and Dean Foods, process

---

[1] DFA is a milk cooperative that markets raw milk for its members and also owns and operates its own hauling companies, processing plants and distribution centers for processed milk. NDH is a Delaware limited partnership which operates processed milk bottling plants. DFA owns a 50% interest and approximately 92% preferred equity interest in NDH. It is without dispute that DFA is the nation's largest milk cooperative.

and pasteurize raw milk purchased from cooperatives, such as DFA. The processed milk is then distributed across the country for human consumption and resale.

On January 3, 2005, McArthur and McCowtree entered into a Non-Exclusive Wholesale Distribution Agreement (the "Agreement") where by McCowtree agreed to purchase and distribute McArthur's processed milk. McArthur alleges that McCowtree is in default of the terms and conditions of a Non-Exclusive Wholesale Distribution Agreement (the "Agreement") and owes McArthur over one million dollars in goods sold, interest, attorney's fees and other collection costs. In response, McCowtree alleges that the Agreement is invalid because it was fraudulently formed. McCowtree further alleges that Dean Foods failed to execute the DOJ's directive and have instead entered into exclusive supply agreements with milk cooperatives to decrease competition for processed milk and have refrained from competing for milk sales to grocery retailers. As a result, McCowtree claims to be dependent on McArthur and Dean Foods for its milk needs.

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). A fact is 'material' when it relates to substantive law at issue in the case and may affect the outcome of the nonmoving party's claim. *Anderson v. Liberty Lobby, Inc*. 477 U.S. 242, 248 (1986). "The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Rule 56(c) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is

a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The nonmoving party "may not rest upon the mere allegations or denials of her pleadings, but … must set forth specific facts showing that there is a genuine issue for trial." *Anderson* 477 at 248 (1986). The court must view the evidence in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970).

### III.  DISCUSSION

A.  McArthur's Claims Against McCowtree

   *1.  Count I: Breach of Contract*

In order to prevail in an action for breach of contract, McArthur must prove: "(1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009). The Agreement between the Parties contained the following provisions:

> 2.3   Distributor agrees to make full payment for all McArthur Products. … Distributor shall not take any deductions against McArthur's invoices unless authorized to do so by McArthur.
>
> 3.1   Distributor agrees to deliver McArthur Products to those McArthur Customers set forth in writing by McArthur.
>
> 3.2   The number, timing, and scheduling of all deliveries made by Distributor to McArthur Customers shall be determined by McArthur.
>
> 12.1   McArthur shall have the right to terminate this Agreement, for any of the following reasons, each of which shall be deemed to constitute a material breach of this Agreement by Distributor: …(b) Distributor fails to make payments due to McArthur within five (5) days after written notice of such failure is delivered to Distributor.

(*Agreement*, at 3-4, 10 (ECF No. 1)).

McArthur contends that there is no issue of material fact as to the existence of the contract, McCowtree's breach of its obligation to make timely payments for the milk purchased

for distribution, and McArthur's subsequent damages. As an affirmative defense, however, McCowtree asserts that it was fraudulently induced into entering the Agreement by McArthur's false representations that it would "act in good faith and would timely provide the services and products agreed upon by the parties, [and] would consistently and competitively price [its] services and products at a preferred rate." (*Affirmative Defenses* ¶ 6 (ECF No. 1)). McCowtree also asserts a counterclaim against McArthur for fraud in the inducement.

In response to McCowtree's counterclaim and, in essence, McCowtree's affirmative defense, McArthur argues that the Agreement's merger clause(s) bars any claim for fraudulent inducement.

> 19.  This Agreement constitutes the entire agreement between the parties and includes all promises and representations, whether expressed or implied, made by McArthur or Distributor. … It is further understood that this Agreement supersedes and replaces any prior agreements, written or oral, and any previous custom or course of dealing, performance of conduct of or between the parties regarding the subject matter contained herein.
>
> 23.  No representation, promise, inducement or statement of intention other than those set forth in this Agreement has been made by McArthur or Distributor and neither party shall be bound buy or liable for any other alleged representation, promise, inducement or statement of intention.

(*Agreement*, at 13, 14). McArthur relies on two cases from the United States District Court for the Southern District of Florida in support of its argument on summary judgment. *See Ben-Yishay v. Mastercraft Dev., LLC*, 553 F. Supp. 2d 1360, 1370 (S.D. Fla. 2008); *Topp, Inc. v. Uniden Am. Corp.*, 513 F. Supp. 2d 1345, 1348 (S.D. Fla. 2007). In both *Ben-Yishay* and *Topp*, the court barred claims for fraudulent inducement because the merger clause prevented reliance on prior misrepresentations. In those cases, however, the alleged misrepresentations were incorporated into the written contract. Here, McCowtree alleges that McArthur made misrepresentations that are *not* incorporated into the Agreement.

Under Florida law, "[t]he existence of a merger or integration clause, which purports to make oral agreements not incorporated into the written contract unenforceable, does not affect oral representations which are alleged to have fraudulently induced a person to enter into the agreement." *Mejia v. Jurich*, 7891 So. 2d 1175, 1178 (Fla. Dist. Ct. App. 2001); *Nobles v. Citizens Mortgage Corp.*, 479 So. 2d 822 (Fla. Dist. Ct. App. 1985) ("oral agreements or representations may be introduced into evidence to prove that a contract was procured by fraud notwithstanding such a merger clause."). "Where misrepresentation of the character or essential terms of a proposed contract occurs, asset to the contract is impossible." *Cancanon v. Smith Barney, Harris, Upham & Co.*, 805 F.2d 998, 1000 (11th Cir. 1986). "In such a case there is no contract at all." *Id.*; *see also Nat'l Union Fire Ins. Co. of Penn. v. Carib Aviation, Inc.*, 759 F.2d 873, 877 n.2 (11th Cir. 1985) (a contract induced by fraud is voidable by the defrauded party). There is a genuine issue of material fact as to the validity of the Agreement. Accordingly, summary judgment is denied as to Count I of the Complaint and Counts VI and VII of the Counterclaim.

   2. *Counts II, III, and IV: Account Stated, Goods Sold and Delivered, and Open Account*
      i. *Account Stated*

A claim for account stated requires "an agreement between the parties that a certain balance is correct and due and an express or implicit promise to pay this balance." *First Union Discount Brokerage Servs., Inc. v. Milos*, 997 F.2d 835, 841 (11th Cir. 1993) (citation omitted). McArthur claims that it issued weekly invoices to McCowtree for goods sold and delivered, many of which remain unpaid. (*Adbell Decl.* ¶ 2, Feb. 10, 2011 (ECF No. 32, Ex. 1)). McCowtree acknowledges having received the invoices, however, disputes the balance owed. (*Meyer Dep.* 166:11-16, Jan. 19, 2011 (ECF No. 32, Ex. 2); *Affirmative Defenses* ¶¶ 20, 22).

Specifically, McCowtree argues that it is "entitled to an offset of the monies paid" to McArthur "as well as certain rebate credits" that were never paid. (*Affirmative Defenses* ¶ 20). In response, McArthur contends that the Agreement does not allow for deductions:

> 2.3   Distributor agrees to make full payment for all McArthur Products. ... Distributor shall not take any deductions against McArthur's invoices unless authorized to do so by McArthur.

(*Agreement*, at 3). Notwithstanding the unambiguous contractual provision, and viewing the facts in the light most favorable to McCowtree, there is existing issue of material fact as whether McArthur authorized deductions against the disputed invoices. Summary judgment as to Count II of the Complaint is denied.

### ii. Goods Sold and Delivered

In order to prevail on a claim for goods sold and delivered on an open account, McArthur must prove delivery of goods and an agreement of the sales price, or a reasonable value of the goods actually delivered. *Alderman Interior Systems, Inc. v. First National-Heller Factors, Inc.*, 376 So. 2d 22, 24 (Fla. Dist. Ct. App. 1979) (citing *Chase & Co. v. Miller*, 88 So. 312 (1921)). McCowtree does not dispute the fact that goods were sold and delivered, and has not objected to the authenticity of McArthur's invoices. Despite McArthur's own admission the "price term was not specifically defined in contract" (*Mem. in Support of Mot. for Summ. J.* 6), the invoices present a "reasonable value of the goods actually delivered." Accordingly, summary judgment is granted as to Count III.

### iii. Open Account

An open account is an "unsettled debt arising from items of work and labor, goods sold and delivered with the expectation of further transactions subject to further settlement." *Central Ins. Underwriters, Inc. v. Nat'l Ins. Fin. Co.*, 599 So. 2d 1371, 1373 (Fla. Dist. Ct. App. 1992).

To prevail in an action for open account, McArthur must prove that a sales contract existed between McArthur and McCowtree, that the amount claimed represents the agreed sales price or the reasonable value of the goods delivered, and that the goods were actually delivered. *See Alderman*, 376 So. 2d at 24; *Evans v. Delro Indus. Inc.*, 509 So. 2d 1262, 1263 (Fla. Dist. Ct. App. 1987). McArthur must also attach an "itemized" copy of the account. *H&H Design Builders, Inc. v. Travelers' Indem. Co.*, 639 So. 2d 697, 700 (Fla. Dist. Ct. App. 1994). Although there is no dispute of the value of the goods sold and delivered to McCowtree, there is an issue of material fact as to the validity of the Agreement. Summary judgment as to Count IV is therefore denied.

*McCowtree's Counterclaims Against McArthur and Dean Foods*

    *1. Counts III and IV: Violation of Section 2 of the Sherman Act*

McCowtree claims that McArthur and Dean Foods are liable for unlawful monopolization and attempt to monopolize in violation of the Sherman Act. "Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons to monopolize any part of the trade or commerce among the several states … shall be deemed guilty of a felony." 15 U.S.C. § 2. The offenses of monopolization and attempt to monopolize are distinct causes of action that require different proofs. To establish monopoly under Section 2, McCowtree must show possession of monopoly power in the relevant market and willful acquisition or maintenance of that power as distinguished from growth or development because of a superior product, business acumen, or historic accident. *See Pacific Bell Tel. Co. v. Linkline Commc'n, Inc.*, 555 U.S. 438 (2009) (citing *United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966). In contrast, a claim for attempted monopolization requires proof that McArthur and Dean Foods engaged in anticompetitive practices with the intent to

monopolize and a dangerous probability of achieving monopoly power. *See U.S. Anchor Mfg., Inc.*, 7 F.3d at 993 (citing *Spectrum Sports, inc. v. McQuillan*, 506 U.S. 447, 455 (1993)).

Monopoly power is "the power to raise prices to supra-competitive levels or … the power to exclude competition in the relevant market either by restricting entry of new competitors or by driving existing competitors out of the market." *U.S. Anchor Mfg., Inc. v. Rule Indus., Inc.*, 7 F.3d 986, 994 (11th Cir. 1993) (citing *American Key Corp. v. Cole Nat'l Corp.*, 762 F.2d 1569, 1581 (11th Cir. 1985)). "The most direct method of establishing monopoly power is through economic proof, namely, demand and supply curves." *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1246 (11th Cir. 2002). The principal of monopoly power is market share. *Id.* (citing *U.S. Anchor Mfg., Inc.*, 7 F.3d at 999). "A market share at or less than 50% is inadequate as a mater of law to constitute monopoly power." *Id.* at 1251. In other words, McCowtree must establish that McArthur and Dean Foods controlled a substantial share of the relevant market.

The relevant market establishes the backdrop against which to measure economic power and includes both the geographic market and the product market. *T. Harris Young & Assoc., Inc. v. Marquette Elec., Inc.*, 931 F.2d 816. 823 (11th Cir. 1991), *cert. denied*, 502 U.S. 1013 (1991). The geographic market encompasses the area in which McArthur and Dean Foods effectively compete and extends to the area of effective competition where buyers can reasonably turn for alternate sources of supply. *Otter Trail Power Co. v. United States*, 410 U.S. 366, 377 (1973). "The outer boundaries of a product market are determined by the reasonable interchangeability of use of the cross-elasticity of demand between the product itself and substitutes for it." *T. Harris Young & Assoc., Inc.*, 931 F.2d at 824. The relevant geographic market must be identified "by careful selection of the market area in which the seller operates." *Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 327 (1961).

In Count III, McCowtree alleges that McArthur and Dean Foods control approximately 77% of the processed milk market in the southeast region of the United States and that they control the majority of the processed milk market in South Florida.  In Count IV, McCowtree claims that McArthur and Dean Foods attempted to use exclusionary and predatory conduct in an attempt to foreclose competition and monopolize the milk market in the South Florida area. McArthur and Dean Foods contend that they are entitled to summary judgment because McCowtree cannot establish the relevant geographic market or their respective market share.

The alleged relevant product and geographic markets at issue involve processed milk in South Florida.  McCowtree alleges that McArthur and Dean Foods have placed "unreasonable restraints on trade in the market for raw milk" which has in turn "resulted in substantial harm to competition for the sale of processed milk in South Florida."  (*Counterclaim*, ¶¶ 80-81). Considering the dynamics of the processed milk market and Dean Foods' exclusive supply contracts with raw milk cooperatives, there is an issue of material fact as to the span and breadth of the relevant product market.  As to the geographic market, McArthur and Dean Foods contend that they compete throughout the entire state of Florida, including South Florida.  (*Statement of Material Facts*, ¶ 3 (ECF No. 32)).  McArthur and Dean Foods argue that the existence of competition "throughout the entire state of Florida and likely beyond" forecloses a finding that they possess monopoly power.  I disagree.  The existence of competition throughout the state of Florida is not dispositive of the existence of a monopoly in South Florida. Furthermore, notwithstanding McCowtree's failure to submit evidence as to McArthur's and Dean Foods' market share in South Florida's processed milk market, McArthur and Dean Foods have likewise failed to conclusively establish that the possess 50% or less of South Florida's processed milk market share.  These issues of material fact preclude summary judgment as to Counts III and IV.

Because Florida's antitrust laws are analyzed under the same rules and case law as McCowtree's federal antitrust claims, summary judgment is also denied as to Count IX.

### *2. Count VIII: Tortious Interference with Advantageous Business Relationship*

McCowtree alleges that McArthur "unjustifiably interfered" with McCowtree's customer business relationships by cutting off McCowtree's milk supply, assuming McCowtree's milk delivery routes, hiring McCowtree's drivers to drive those delivery routes, collecting McCowtree's own accounts receivable, and telling McCowtree's customers that McCowtree was out of business and should conduct all future business with McArthur.

"Under Florida law, the elements of an interference with a business relationship claim are: (1) the existence a business relationship, (2) the defendant's knowledge of that relationship, (3) an intentional and unjustified interference with the relationship, and (4) injury resulting from the interference of the relationship." *Dunn v. Air Line Pilots Ass'n*, 193 F.3d 1185, 1191 (11th Cir. 1999). "A thwarted business relationship need not be evidenced by an enforceable contract." *Nautica Int'l, Inc. v. Intermarine USA, LP*, 5 F. Supp. 2d 1333, 1344 (S.D. Fla. 1998) (citing *United Yacht Brokers, Inc. v. Gillespie*, 377 So. 2d 668 (Fla. 1979)). "An action for intentional interference is appropriate even though it is predicated on an unenforceable agreement, if the jury finds that an understanding between the parties would have been completed had the defendant not interfered." *Id.* (citing *F.T. Laundry v. Hornstein*, 462 So. 2d 844, 846 (Fla. Dist. Ct. App. 1985). There are, however, exceptions. "Lawful competitive practices are privileged under Florida tortuous interference law. As long as no improper means are employed, business activities taken to safeguard or promote one's own financial interests are not actionable." *Metzler v. Bear Auto. Serv. Equipment Co.*, 19 F. Supp. 2d 1345, 1364 (S.D. Fla. 1998). A party's privilege to interfere "is qualified only where malice is the *sole* basis for

the interference… In other words, the party must be interfering *solely* out of spite, to do harm, or for some other bad motive." *Ernie Harie Ford, Inc. v. Ford Motor Co.*, 260 F.3d 1285, 1294 n.9 (11th Cir. 2001) (emphasis in original).  "If [a defendant's] conduct is not wrongful or illegal, it is justified." *Metzler*, 19 F. Supp. 2d at 1364.

McArthur argues that the Agreement provided the express authority to sell its products directly to McCowtree's customers:

> 2.4    McArthur reserves the rights, in its sole discretion, to totally or partially limit the sale to Distributor of newly introduced products or experimental test market products … and to cease the manufacture or distribution of any McArthur products at any time.
>
> 2.5    Distributor hereby acknowledges that the right granted…to distribute and sell McArthur Products to Distributor's Customers is non-exclusive.  It is specifically understood and agreed that McArthur shall retain the right to (a) distribute and/or sell McArthur Products directly to any customers whatsoever … including but not limited to Distributor's Customers or any potential customers of Distributor, and/or (b) engage or authorize other third party distributors, upon such terms and conditions that McArthur may elect in its sole discretion, to distribute and/or sell McArthur Products to … Distributor's Customers or any potential customers of Distributor.
>
> 12.6    McArthur may …take such action as may be reasonable to maintain the uninterrupted distribution of McArthur Products …, including, but not limited to, the right to distribute and/or sell McArthur Products to Distributor's Customers either directly or through other third party distributors.

(*Agreement*, at 3, 11).

McCowtree has failed to provide any evidence that McArthur assumed McCowtree's delivery routes "*solely* out of spite, to do harm, or for some other bad motive."  Summary judgment is therefore granted in favor of McArthur as to Count VIII.

## IV.  CONCLUSION

For the reasons set forth in this Order, McArthur's and Dean Foods' Motion for Summary Judgment (ECF No. 30) is **GRANTED** as to Count III of the Complaint and Count

VIII of the Counterclaim. Summary judgment is **DENIED** as to Counts I, II and IV of the Complaint, and Counts III, IV, VI, VII and IX of the Counterclaim.

      **DONE and ORDERED** in chambers at Miami, Florida this 13th day of July 2011.

                                            MARCIA G. COOKE
                                            United States District Judge

Copies furnished to:
*William C. Turnoff, U.S. Magistrate Judge*
*Counsel of Record*